ONG SEEN v. BURNETT, Immigration Inspector.

(Circuit Court of Appeals, Ninth Circuit. May 8, 1916.)

No. 2714.

1. ALIENS ⬤⟶32(8)—CHINESE PERSONS—MERCHANTS.

The mere fact that a Chinese personally admitted into the country and domiciled as a merchant thereafter becomes a laborer does not justify his deportation; but a showing that a Chinese person, almost immediately upon his arrival, engaged in the occupation of a peddler, instead of a merchant, warrants a finding that he was admitted as a merchant on fraudulent representations, it appearing that he never engaged in business as a merchant.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. § 84; Dec. Dig. ⬤⟶32(8).]

2. HABEAS CORPUS ⬤⟶30(1)—PROCEEDINGS—VALIDITY OF WARRANT.

Under Rev. St. § 761 (Comp. St. 1913, § 1289), declaring that in habeas corpus the judge shall dispose of the party as law and justice require, a Chinese person, seeking discharge on habeas corpus from arrest by immigration officials, who sought his deportation, is not entitled to discharge because the warrant merely alleged he was unlawfully in the United States in violation of the Chinese Exclusion Laws and subject to deportation, where the Chinese person made no objection to the indefiniteness of the warrant and was advised of the charge against him.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. § 25; Dec. Dig. ⬤⟶30(1).]

Appeal from the District Court of the United States for the District of Arizona; Wm. H. Sawtelle, Judge.

Application by Ong Seen, alias Ong Chung Lung, for writ of habeas corpus against Alfred E. Burnett, Inspector in Charge of United States Immigration Service at Tucson, Ariz. From a judgment denying the writ, applicant appeals. Affirmed.

The appellant, a native of China, had been ordered deported, and a warrant of deportation had been issued, when he sued out a writ of habeas corpus in the court below, and on the hearing he was ordered remanded to the custody of the inspector in charge at Tucson, Ariz. In his return to the writ, the inspector annexed a full transcript of the proceedings on which the

appellant was ordered deported. The facts are in substance the following: The appellant arrived at San Francisco from China on April 8, 1906, and he was permitted to land upon the strength of a certificate which had been issued to him under Act May 6, 1882, c. 126, § 6, 22 Stat. 60, as amended by Act July 5, 1884, c. 220, 23 Stat. 116 (Comp. St. 1913, § 4293), in which it was represented that he was a merchant and that he had $2,000 (gold) interest in the firm of Hop Yick Loong in China, and on the representations contained in a letter from the American Consul General at Canton to the Commissioner of Immigration at San Francisco, stating that the appellant's certificate had been viséed, that the appellant would take with him $1,000 in gold and would have about $3,000 sent him later by draft, and that his father was known to have $70,000, while the appellant himself was worth $50,000 (Mexican), and it was stated that the appellant was going to set up a wholesale sundry goods shop in San Francisco. From the time of his arrival until January 23, 1912, the appellant resided in San Francisco and Oakland, and during the first four years of that time he was occupied as a peddler of herbs from house to house. In July, 1908, he invested $500 in a drug store in San Francisco, but did not become an active member of that firm until November 1, 1910. He still retains his interest in the firm, but has never received any dividends. On January 23, 1912, after securing a pre-investigation of his status as a lawfully domiciled Chinese merchant, the appellant departed for China. He returned to San Francisco a year later, and was admitted by the Commissioner of Immigration, who issued to him a certificate of identity. Thereupon he returned to his old occupation of peddling herbs. In February, 1914, he went to Phœnix, Ariz., and remained there a few days, and then went to Mesa, Ariz., making the Arizona Restaurant his headquarters. He testified that he came to Arizona looking for a location for business. He admitted that he had no money, and that no one owed him money, but he said that if he found a suitable location he could borrow money and start a store. In March, 1914, he was seen working in a restaurant at Mesa, where it appeared that he worked as an employé for a period of three or four weeks. In April of that year he was arrested, and upon the hearing was ordered to be deported.

Struckmeyer & Jenckes, of Phœnix, Ariz., and John L. McNab, of San Francisco, Cal., for appellant.

Thomas A. Flynn, U. S. Atty., of Phœnix, Ariz., and Samuel L. Pattee, Asst. U. S. Atty., of Tucson, Ariz., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant contends that he was not allowed a fair hearing in the proceedings for deportation. We find nothing in the record to sustain the contention. Throughout the hearing and at every session the appellant was represented by his own counsel, and every opportunity was afforded him to produce evidence.

[1] The appellant relies principally on the contention that there is no evidence in the case to overcome the presumption that, having been admitted to the United States as a merchant, he had the right to be and remain in the United States, and he argues that one who has lawfully entered the United States is not forbidden thereafter to change his occupation, and that he may do so without incurring the penalty of deportation. It may be conceded that the mere fact that an alien who has been domiciled as a merchant thereafter becomes a laborer does not in itself justify his deportation. But there is in this case more than the mere fact of a change of occupation. There is evidence which we think might justify the immigration officers in

believing, as no doubt they did believe, that the appellant never in fact belonged to the merchant class, and that he was admitted in the first instance upon fraudulent representations as to his status as a merchant, for it is shown that almost immediately upon his arrival he engaged in the occupation of a peddler, and that has been his occupation during nearly the whole period of his residence in the United States. In United States v. Yong Yew (D. C.) 83 Fed. 832, it was held that, if one who has been admitted on certificate as a merchant of China immediately upon his arrival proceeds to and continues in employment as a laborer, that fact has a strong retroactive bearing as evidence of the intent with which he came here. To the same effect are Chain Chio Fong v. United States, 133 Fed. 154, 66 C. C. A. 220; Cheung Him Nin v. U. S., 133 Fed. 391, 66 C. C. A. 453. It is argued that the appellant's course in becoming a peddler was the result of the great earthquake and fire at San Francisco, which occurred a few days after his arrival, but the argument is not convincing. He has suggested no reason why he might not have entered into business in some other city or town of California or elsewhere. He makes no showing that in fact he brought money with him when he first came from China, or that at any time he could have commanded money with which to enter into business during the first two years of his residence in the United States, and in fact he wholly fails to show any causal connection between the disaster of 1906 and his own failure to enter into business as a merchant.

[2] It is contended that the appellant should have been discharged for the reason that the warrant under which he was taken into custody was fatally defective, in that it did not advise him of the charge against him, and so was insufficient to confer jurisdiction upon the Secretary of Labor. The warrant alleged that the appellant was unlawfully within the United States and had been found therein in violation of the Chinese Exclusion Laws, and was therefore subject to deportation, under Act Feb. 20, 1907, c. 1134, § 21, 34 Stat. 905 (Comp. St. 1913, § 4270). The warrant may have been subject to a motion to vacate, or so indefinite that the appellant was entitled to demand a bill of particulars. But he made no objection to proceeding thereunder, and the record proves that he was fully advised of the ground on which his deportation was sought, and that he met the charge with such testimony as was available. It is well settled that a defect in the warrant is no ground for the discharge of the petitioner on a writ of habeas corpus. Nishimura Ekiu v. U. S., 142 U. S. 651, 12 Sup. Ct. 336, 35 L. Ed. 1146; Toy Tong v. United States, 146 Fed. 343, 76 C. C. A. 621; Ex parte Hamaguchi (C. C.) 161 Fed. 185; Siniscalchi v. Thomas, 195 Fed. 701, 115 C. C. A. 501; United States v. Uhl, 211 Fed. 628, 128 C. C. A. 560; United States v. Williams, 200 Fed. 538, 118 C. C. A. 632; Healy v. Backus, 221 Fed. 358, 137 C. C. A. 166. The rule in all such cases, made obligatory by section 761 of the Revised Statutes (Comp. St. 1913, § 1289), is that the judge granting the writ shall on the hearing "dispose of the party as law and justice require." This means not as law and justice required at the time of the arrest, but as law and justice require at the time of the hearing. Iasigi v. Van De Carr, 166 U. S. 391, 17 Sup. Ct. 595.

41 L. Ed. 1045; Motherwell v. United States, 107 Fed. 437, 455, 48 C. C. A. 97.

We find no ground for holding that the appellant did not have a fair hearing, and we are not convinced that there was no substantial evidence to overcome the presumption arising from his possession of a certificate, and to sustain the conclusion that when he first came to the United States he did not belong to the merchant class.

The order of the court below is affirmed.